Robert S. Wagner, OSB #84411
David C. Lewis, OSB #95334
MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, OR 97210-3408
Telephone: (503) 299-6116
Facsimile: (503) 299-6106
E-mail: rsw@miller-wagner.com

     Of Attorneys for Defendants City of Gresham, Carla Piluso and Robert A. Fussell

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| RAYMOND M. TERCEK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV03-731-MO |
| | ) | |
| v. | ) | MEMORANDUM OF LAW IN SUPPORT |
| | ) | OF DEFENDANTS' MOTION FOR |
| CITY OF GRESHAM, an Oregon | ) | SUMMARY JUDGMENT |
| Municipal Corporation, CARLA PILUSO, | ) | |
| Chief of Police, and ROBERT A. FUSSELL, | ) | |
| City Manager, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

     Defendants City of Gresham, Carla Piluso and Robert Fussell respectfully submit

the following Memorandum of Law in Support of their Motion for Summary Judgment.

     DATED this 31st day of August, 2004.

                    MILLER & WAGNER LLP


               By: _____
                    David C. Lewis, OSB #95334
                    Of Attorneys for Defendants
                    (503) 299-6116

                    Trial Attorney:
                    Robert S. Wagner, OSB #84411

<u>**TABLE OF CONTENTS**</u>

                                                                    **Page**

TABLE OF CASES AND AUTHORITIES                                        3

INTRODUCTION                                                          6

LEGAL ARGUMENT                                                        9

    A.    Summary Judgment Standard                       9

    B.    None of Plaintiff's Constitutional Due Process    10
        Rights Were Violated
        1.    No Due Process Property Rights Were Violated    11
            a.    Defendants Provided Plaintiff With Far
                More Than Two Week Notice of His
                Termination
            b.    There Was No Property Right to
                Reinstatement Into An Open Lieutenant's
                Position
            c.    There Was No Property Right to
                Reappointment To The Vacant Lieutenant's
                Position
            d.    No Property Right To Be Offered Any
                Position Despite the Fact the City has Hired
                New Line Officers
        2.    No Due Process Liberty Interest Rights Were
            Violated                                        18

    C.    Plaintiff Fails to State a Claim for Common Law
        Wrongful Discharge                                 20

    D.    Plaintiff Fails to State a Claim for Common Law Defamation
        – Slander Per Se                                   23

    E.    Plaintiff Fails to State Claims for Breach of an Implied Contract
        or Promissory Estoppel                             24

    F.    Plaintiff Fails to State a Claim for Common Law Intentional
        Infliction of Emotional Distress                   26

Page 2 -        MEMORANDUM OF LAW IN SUPPORT OF
                DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**MILLER & WAGNER** LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

TABLE OF CASES AND AUTHORITIES

| Cases Cited | Page |
|---|---|
| *Anderson v. Liberty Lobby, Inc.*<br>477 U.S. 242, 251-52, (1986) | 9 |
| *Celotex Corp. v. Catrett*<br>477 U.S. 317, 323 (1986) | 9 |
| *Intel Corp. v. Hartford Acc. & Indem. Co.*<br>952 F.2d 1551, 1558 (9th Cir. 1991) | 9 |
| *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*<br>475 U.S. 574, 587 (1986) | 9 |
| *Hahn v. Sergeant*<br>523 F.2d 461, 467 (9th Cir. 1975) | 9 |
| *Saucier v. Katz*<br>533 U.S. 194, 200 (2001) | 10 |
| *Monell v. New York City Dept. of Soc. Serv.*<br>436 U.S. 658, 690-94 (1978) | 10 |
| *Gillette v. Delmore*<br>979 F.2d 1342, 1346 (9th Cir. 1992) | 10 |
| *City of Los Angeles  v. Heller*<br>475 U.S. 796, 799 (1986) | 10 |
| Palmerin v. City of  Riverside<br>794 F.2d 1409, 1414-15 (9th Cir. 1986) | 11 |
| *Allen v. City of Beverly Hills*<br>911 F.2d 367, 370 (9th Cir. 1990) | 11 |
| *Papadopoulos v. Board of Higher Education*<br>14 Or. App. 130, 168, 511 P.2d 854 (1973) | 11 |
| *Act Up! Portland v. Bagley*<br>988 F.2d 868, 871 (9th Cir. 1993) | 13 |
| *Elder v. Holloway*<br>510 U.S. 510, 514 (1994) | 13 |
| *Malley v. Briggs*<br>475 U.S. 335, 341 (1986) | 13 |

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**MILLER & WAGNER** LLP<br>Trial Lawyers<br>2210 N.W. Flanders Street<br>Portland, Oregon 97210-3408<br>(503) 299-6116

*Brady v. Gebbie*
   859 F.2d 1543, 1552 (9th Cir. 1988)                18

*Bickford v. Tektronix, Inc.*
   116 Or. App. 547, 551-52, 842 P.2d 432 (1992)      19

*Bishop v. Wood*
   426 U.S. 341, 348 (1976)                        19

*Babbick v. Oregon Arena Corp.*
   333 Or. 401, 407, 40 P.2d 1059 (2002)          20

*Seiverson v. Allied Stores Corp.*
   97 Or. App. 315, 319, 776 P.2d 38 (1989)        21

*Brown v. Transcon Lines*
   284 Or. 597, 588 P.2d 1087 (1978)            21

*Delaney v. Taco Time Int'l*
   297 Or. 10, 681 P.2d 114 (1984)              21

*Nees v. Hocks,*
   272 Or. 210, 536 P.2d 512 (1975)             21

*McGanty v. Staudenraus*
   123 Or. App. 393, 859 P.2d 1187 (1995)         21

*Archer v. Leticia Corp.*
   323 Or. 335, 917 P.2d 1024 (1996)           21

*Beecher v. Montgomery Ward and Co.*
   267 Or. 496, 500, 517 P.2d 667 (1973)         24

*Andreason v. Guard Publishing Co.*
   260 Or. 308, 489 P.2d 944 (1971)           24

*Hass v. Painter*
   62 Or. App. 719, 723-25, 662 P.2d 768 (1983)    24

*Sheets v. Knight*
   308 Or. 220, 230, 779 P.2d 1000 (1989)       25

*Seibel v. Liberty Homes, Inc.*
   305 Or. 362, 365, 756 P.2d 291 (1998)        25

*Koepping v. Tri-Met*
   120 F.3d 998, 1002 (9th Cir. 1997)          25

*Patton v. J.D. Penney Co.*
   301 Or. 117, 122, 719 P.2d 854 (1986)        27

**MILLER & WAGNER** LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

*Meagher v. Lamb-Weston*
    839 F. Supp. 1403, 1410 (D. Or. 1993)          27

*Watte v. Edgar Maeyens*
    112 Or. App. 234, 239, 828 P.2d 479 (1992)       27

*Garbayo v. Chrome Data Corp.*
    2001 WL 34039495, *2 (D.Or. 2001)          27

*Volm v. Legacy Health Systems, Inc.*
    237 F. Supp.2d 1116, 1180 (D.Or. 2002)        28

**MILLER & WAGNER** LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

## INTRODUCTION

This lawsuit arises out of plaintiff's layoff from a Captain's position with the Gresham Police Department. He asserts claims for the following: § 1983 procedural due process; the common law torts of wrongful discharge, defamation and intentional infliction of emotional distress; and breach of implied contract/promissory estoppel.

Plaintiff was hired by then-Chief of Police Bernie Giusto in 1997 to fill a newly created Captain's position in the Gresham Police Department (GPD). At that time, the rank of Captain was the second highest in GPD, subordinate only to the Chief of Police. The addition of plaintiff gave GPD two Captains, where formerly there had only been one. Plaintiff alleges that when he was hired, then-Chief Giusto promised him that if the newly created Captain's position was ever eliminated for budgetary reasons, plaintiff would be moved into a vacant Lieutenant's position, if one were available.

At the time plaintiff was hired, Jerry Johnson, who, by that time, had been an officer with the Gresham Police Department for 20+ years, had held the existing Captain's position for several years.

Giusto remained the Gresham Police Chief until the Fall of 2002, when he was elected Multnomah County Sheriff. Shortly thereafter, Carla Piluso, a 25-year veteran of the Gresham Police Department, was appointed Chief of Police. Prior to her appointment, she held the rank of Lieutenant and was, therefore, subordinate to both plaintiff and Johnson.

Approximately two weeks after her appointment as Chief, she was confronted by the worst budget crisis in Gresham's history. The City found itself with an unanticipated revenue shortfall necessitating $1.8 million in midyear expenditure cuts. This was in addition to the projected $3.1 million deficit that had been addressed during the adoption process of that year's budget. Although every Department Head in the City was ordered to make sizeable midyear cuts, the level required of the Police Department was

**MILLER & WAGNER** LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

the largest in the City.  City Manager Rob Fussell ordered newly-appointed Chief Piluso to eliminate $350,000.00 in expenditures from the Police Department budget over the remaining seven/eight months of the fiscal year.

One of Piluso's goals as Chief was to keep as many "cops on the street" as possible.  After gathering numerical data, considering various alternatives and seeking the advice of the City's Human Resources Director, Chief Piluso decided that one of her budget reduction strategies would be to flatten the administrative command structure within the Police Department and eliminate one or both of the Captain's positions. Knowing that both plaintiff and Captain Johnson had been considering retirement at some point in the not-too-distant future, she inquired of each regarding their retirement plans.  Johnson told her he intended to retire in July, 2003.  Tercek planned to retire at the end of 2003.[1]  Because Captain Johnson had far greater seniority with the Gresham Police Department than plaintiff, Chief Piluso decided to cut plaintiff's position immediately and then leave Johnson's position vacant when he retired seven months later.[2]

Anticipating that plaintiff would react negatively to his layoff and that his continued presence in the Police Department would prove disruptive, Chief Piluso, acting on advice from the City's Human Resources Director, decided to relieve plaintiff of his job duties on the same day he was notified of the layoff, but to keep him in the City's

---

[1] This fact is actually in dispute.  Plaintiff has testified he told Piluso he intended to retire at the end of 2003.  Piluso, on the other hand, says plaintiff would not give her a projected retirement date and, in fact, was intentionally vague and evasive about his plans.  For purposes of their Summary Judgment Motion, defendants will resolve this factual dispute by assuming plaintiff's version is correct.  The dispute is immaterial, in any event.

[2] A common municipal budget balancing technique is to leave open positions in the budget, but not fill them, thereby freeing up the salary budgeted for the position to be used to cover other expenditures.

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**MILLER & WAGNER** LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

employ for an additional eight weeks.  As a result, for the last two months of plaintiff's employment by the City, he was on paid leave.

When plaintiff was notified of his layoff, he told Chief Piluso and Human Resources Director McMillan that at the time he was hired into the Captain's position he was told by former Chief Giusto that if his Captain's position was ever eliminated for budgetary reason, he would be placed into any open Lieutenant's position that might be available.  The Police Department was accepting applications for an open Lieutenant's position at that point and plaintiff asked Piluso and McMillan whether he would be automatically placed into that position.  He was told that he would not be.

Neither Piluso nor the Human Resources Director McMillan had any knowledge of any preemployment promise by Giusto, there was no documentation of any such promise, and McMillan told Chief Piluso that former Chief Giusto would not have had the authority to make any such promises in any event.

During the meeting with Piluso and McMillan, plaintiff was told that he should return to the Police Department, clean out his office and not return to work.  When plaintiff arrived at his office, he was met by one of the GPD Lieutenants, who had been told by Piluso to collect plaintiff's City property when plaintiff left the building.  While plaintiff was cleaning out his office, he was approached by several GPD officers who asked what was happening.  He told them he had been "laid off."

After plaintiff left the Police Department, but prior to the termination of his employment with the City, plaintiff was invited by Piluso and the Human Resources Director to apply for the open Lieutenant's position, so he could be considered along with all the other applicants.  Plaintiff refused to participate in the application process, so he was not considered for the position.  He eventually filed a grievance on that issue, which was denied as untimely.

Shortly thereafter, he filed this lawsuit.

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

## LEGAL ARGUMENT

A.  **Summary Judgment Standard.**

Summary Judgment is appropriate if the court finds that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. F.R.C.P. 56(c).  A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  A party seeking Summary Judgment bears the initial responsibility of providing the basis of its motion, and identifying those portions of the record which it believes "demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)).  If the moving party meets its initial burden of showing "`the absence of a material and triable issue of fact,' `the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.'"  Intel Corp. v. Hartford Acc. & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991) (quoting Richards v. Neilsen Freight Lines, 810 F. 2d 898, 902 (9th Cir. 1987)).

The opposing party must come forward with sufficient evidence demonstrating to the court that there are genuine issues of material fact to be decided at trial.  Fed. R. Civ. P. 56(e).  The party may not simply rely upon the pleadings to designate specific facts establishing a genuine issue for trial.  Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 324.  If "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no `genuine issue for trial.'"  Matsushita Elec. Industrial Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

The non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts.  Id. at 586.  Although plaintiffs are "entitled to all favorable inferences, [they] are not entitled to build a case on the gossamer threads of whimsy, speculation, and conjecture."  Hahn v. Sergeant, 523 F.2d 461, 467

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

(9th Cir. 1975), <u>cert.</u> <u>denied</u>, 425 U.S. 904 (1976).

**B.**    <u>None of Plaintiff's Constitutional Due Process Rights Were Violated.</u>

The first step under either a qualified immunity analysis for defendants Piluso and Fussell, or a <u>Monell</u> analysis for the City of Gresham, is to determine whether plaintiff's constitutional rights were violated, so defendants' analysis will begin with that issue.

Qualified immunity is "an immunity from suit rather than a mere defense to liability." <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001). The Supreme Court has repeatedly emphasized that qualified immunity questions should be resolved at the earliest possible stage in litigation. <u>Id.</u> at 200-201. The concept of qualified immunity operates to ensure that before government employees are subjected to suit, they are on notice that their conduct is unlawful. <u>Id.</u> at 206.

In <u>Saucier</u>, the Supreme Court clarified the qualified immunity inquiry. The Court outlined a two-step process. First, the trial court must determine whether a constitutional right would have been violated on the facts alleged taken in the light most favorable to plaintiff. <u>Id.</u> at 201. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity" and defendant is entitled to judgment in his favor. <u>Id.</u>

Under the requirements established by the United States Supreme Court in <u>Monell v. New York City Dept. of Soc. Serv.</u>, 436 U.S. 658, 690-94 (1978), liability may be imposed on defendant City of Gresham under § 1983 only if plaintiff establishes that his constitutional injury was inflicted pursuant to an official policy or custom, <u>not under a respondeat superior theory of liability</u>. <u>Monell</u>, 436 U.S. at 691; <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1346 (9th Cir. 1992), <u>cert.</u> <u>denied</u>, 510 U.S. 932 (1993). Absent any constitutional violations by the individual defendants, there can be no <u>Monell</u> liability against defendant City <u>even</u> <u>if</u> there exists a policy or custom that might have authorized an unconstitutional deprivation of plaintiff's rights. <u>City of Los Angeles v. Heller</u>, 475

**MILLER & WAGNER** LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

U.S. 796, 799 (1986); <u>Palmerin v. City of Riverside</u>, 794 F.2d 1409, 1414-15 (9th Cir. 1986).

> 1.    <u>No Due Process Property Rights Were Violated</u>.

Plaintiff's first claim for relief alleges that the City of Gresham Administrative Rules (GARS) created property rights protected by Due Process Clause.  (Compl. ¶¶ 15-16.)  Specifically, he alleges his termination[3] violated four property rights created in the GARS:

> Defendants violated plaintiff's right to procedural due process in one or more of the following ways: (a) defendants failed to provide the plaintiff with two weeks notice, or any advance notice, of the termination of his employment; (b) defendants failed to provide plaintiff with reinstatement to the then open position of lieutenant for which he was qualified; (c) defendants failed to reappoint plaintiff to other vacant suitable positions within the City of Gresham Police Department although there was a lieutenant's position open until March 31, 2003 for which plaintiff made demand for reinstatement; and (d) have failed to offer plaintiff any position despite the fact that defendants have created and hired other new officers to positions in the Police Department for which plaintiff would have been qualified.

(Compl. ¶ 19.)

Whether municipal regulations create a protected property interest in employment depends on the extent to which the regulation contains mandatory language that restricts the discretion of the decision maker.  <u>Allen v. City of Beverly Hills</u>, 911 F.2d 367, 370 (9th Cir. 1990); <u>Papadopoulos v. Board of Higher Education</u>, 14 Or. App. 130, 168, 511 P.2d 854 (1973), <u>rev</u>. <u>denied</u> (Nov. 27, 1973), <u>cert</u>. <u>denied</u> 417 U.S. 919 (1974).  If the decision to confer a benefit is unconstrained by "particularized standards or criteria," then no property right exists.  <u>Allen</u>, 911 F.2d at 370.

---

[3]"Termination" is a term of art under the GARS.  GAR 1.05 defines "termination" as "involuntary separation from City employment by the Manager for reasons other than discipline."  (Ex. 9.)  Hence, a budgetary layoff is a "termination."

**MILLER & WAGNER** LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

     **a.**    <u>Defendants Provided Plaintiff With Far More Than Two Week
Notice of His Termination</u>.

Plaintiff contends defendants violated his property right to two weeks notice of

his termination.  (Compl. ¶ 19(a).)  GAR 30.20.030 provides "[a]t least two weeks

before the effective date of a <u>termination</u>, the Manager will give written notice of the

<u>termination</u> to the employee. . . ."  [Emphasis added.]  (Ex. 9.)

Here, plaintiff was given far more than two weeks notice of his termination.  On

December 5, 2002, the City's Human Resources Director, John McMillan,[4] provided

plaintiff with a "Notification of Layoff."  (Ex. 1, Piluso Depo., p. 92.)  The notice

provided in relevant part:

> Consequently, you will be laid off from your position effective immediately.
> However, to ease this transition, you will be paid through the end of
> January 2003.  In addition, the City will offer to pay for your group
> insurance coverage through March 2003. . . .

(<u>Id.</u>)  In effect, plaintiff was notified that he was being "laid off," but that he would

continue in the City's employ until January 31 – nearly two months later.  In other

words, plaintiff was given eight weeks notice of his "termination (defined in GAR 1.05

as "involuntary separation from City employment . . . for reason other than discipline")

and told to take those eight weeks off with pay.[5]

Plaintiff apparently contends that he had a property right to come into work each

day for two weeks even though he was being paid to stay home.  In other words, he

claims defendant Piluso violated his constitutional rights by giving him an extended

leave with full pay and benefits.

Defendants are aware of no case law which even hints such personnel action

---

[4] Mr. McMillan prepared the Notifications.  He is not a defendant.

[5] Plaintiff's counsel has repeatedly stated that plaintiff's employment with the City
"terminated" on January 31.  See, e.g., Ex. 6, p. 6.

     MEMORANDUM OF LAW IN SUPPORT OF
                DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**MILLER & WAGNER** LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

could be unconstitutional.  Plaintiff did not have a constitutional right to come into the office when he was being paid to stay home.  Plaintiff's alleged property right in two weeks advanced notice was not violated and none of the defendants can be liable on this claim.

Even if this court were to find such a constitutional right, it would apparently be the first to do so, meaning defendants Piluso and Fussell are entitled to qualified immunity under the second step of the <u>Saucier</u> analysis.

If a constitutional violation can be made out, the next analytical step is to determine whether the right was clearly established in light of the specific context of the case, not as a broad, general proposition.  <u>Id.</u>  "The relevant, dispositive inquiry in determining whether a right is clearly established, is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  <u>Id.</u> at 202. The issue in the second step of the qualified immunity analysis is whether a reasonable public official "<u>could have believed</u>" her conduct was lawful.   <u>Act Up! Portland v. Bagley</u>, 988 F.2d 868, 871 (9th Cir. 1993) (emphasis added).  Qualified immunity is intended to protect public officials "from undue interference with their duties and from potentially disabling threats of liability."  <u>Elder v. Holloway</u>, 510 U.S. 510, 514 (1994).  This immunity allows public officials to make mistakes in judgment, and protects "all but the plainly incompetent and those who knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).

Prior to making the layoff decision, Piluso consulted with Human Resources Director McMillan, who suggested various options concerning the mechanics of the layoff of plaintiff.  After consultation with Mr. McMillan, Piluso chose the procedure specified in McMillan's Notification of Layoff Memorandum.  A reasonable public official in Piluso's position, after consulting with her Human Resources Director, could have believed that giving plaintiff eight weeks paid leave after notifying him of his layoff was

**MILLER & WAGNER** LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

completely consistent with the "two weeks" advance notice provision specified by GAR 30.20.030.

Defendant Fussell is entitled to qualified immunity for the same reasons, and for a more fundamental reason:  There is no evidence he played any role in the decision to lay plaintiff off, or to require him to take eight weeks paid leave or in drafting the December 5, 2002, Notification of Layoff Memorandum.

Finally, if as plaintiff suggests, the December 5, 2002, layoff notice violated his constitutional property rights because it violated the GARS, then the City of Gresham cannot be liable either.  The GARS are City policy.  If the GARS were violated by Piluso or Fussell, then they violated City policy.  Under plaintiff's theory, if City policy (i.e. GAR 30.20.030) had been followed, there would have been no constitutional violation.  That is the opposite of <u>Monell</u> liability.

### b.    <u>There Was No Property Right to Reinstatement Into An Open Lieutenant's Position.</u>

Plaintiff next contends defendants violated his property right to "reinstatement to the then open position of lieutenant for which he was qualified."  (Compl. ¶ 19(b).)  In support of this alleged "property right" plaintiff cites to GAR 3.20.030(b)[6] which states"[a]n employee whose work performance has met expectations and who is terminated will be <u>eligible</u> for reinstatement in other positions which require similar qualifications, and involve similar duties and responsibilities as the previous job," [emphasis added] and GAR 3.05.010(f)(2)[7] which states "[t]he Manager <u>may</u> demote an employee to a vacant position . . . in lieu of separation."  [Emphasis added.]  (Compl. ¶ 16.)

---

[6] Ex. 9.

[7] Ex. 9.

**MILLER & WAGNER** LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

Neither of these GARS contain mandatory language that restricts the discretion of the decision maker and confer a property right.  See Allen, 911 F.2d at 370.  GAR 3.05.030(b) provides that a terminated employee "will be eligible" for reinstatement, not that the employee "will be reinstated."  Eligible is not defined in the GARS.  The ordinary meaning of "eligible" is decidedly not mandatory.

"Reinstatement" is defined as "reappointment of a former employee to the same or comparable class or position."  GAR 1.05.  "Classification" or "Class" is defined as "positions that are sufficiently alike with respect to duties and responsibilities to warrant using the same title, general recruiting indicators, and salary range.  GAR 1.05.  The Captain's position and the Lieutenant's position are not "the same or comparable," as one is subordinate to the other, nor are they "sufficiently alike with respect to duties and responsibilities to use the same title" for the same reason.

Therefore, GAR 3.05.030(b) simply does not apply to plaintiff's situation.

Appointment to a lower class is a "demotion," not a "reinstatement."  GAR 1.05.  GAR 3.05.010(f) merely provides that the employee "may be" demoted to suitable vacant position, not that the employee "shall be" or "will be" demoted.  Again, non-mandatory language that does not create a property right because it allows for discretion.

Plaintiff possessed no property right to be reinstated or demoted to the vacant Lieutenant's position.  Accordingly, the qualified immunity and Monell municipal liability analysis need proceed no further because plaintiff cannot establish the violation of a constitutional right as a threshold matter.

Even if we proceed to step two of the qualified immunity analysis, Piluso and Fussell are still entitled to qualified immunity.  It is undisputed that plaintiff was invited to apply for the open lieutenant's position.  (Ex. 6.)  Plaintiff was reportedly asked whether he was interested in participating in the Lieutenant selection process and he was

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

informed of the steps necessary to be part of the process.  (Id..)   After indicating an initial interest in applying, plaintiff changed course, refused to apply and simply demanded the position.  (Id.)

Defendants are aware of no case holding that the type of discretionary language in the GARS cited by plaintiff establishes a property right, let alone that the law in that area was clearly established in 2002.  Reasonable public officials like Piluso and Fussell[8] could have concluded that refusing plaintiff's demands of automatic placement into the Lieutenant's position did not violate his clearly established constitutional rights.  They are entitled to qualified immunity under the second step of the Saucier analysis, as well.

Similarly, the City cannot be liable under a Monell theory either.  Again, plaintiff alleges (incorrectly) that City policy (i.e. GARS) created a property right and that Piluso/Fussell violated that right by violating the GARS.  If Piluso/Fussell violated the GARS, then by definition, they violated City policy.  Therefore, plaintiff's rights were not violated by a City policy, but rather by City employees who misapplied an otherwise constitutional policy.

       c.    **There Was No Property Right to Reappointment To The Vacant Lieutenant's Position.**

Plaintiff's third contention of due process property right violation is similar to the second contention discussed above:  Defendants "failed to reappoint plaintiff to other vacant suitable positions within the City of Gresham although there was a lieutenant's position open under March 31, 2003 for which plaintiff made demand for reinstatement."  (Compl. ¶ 19(c).)  As discussed above, plaintiff had no property right under the GARS to be appointed, demoted or reinstated into a Lieutenant's position,

---

[8] There is no evidence Fussell was involved in this issue until plaintiff sent him a grievance in February, 2003.  Fussell simply denied the grievance as untimely, which it was.  There is nothing unconstitutional about that.

**MILLER & WAGNER** LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

even if it was open.

Plaintiff's use of the terms "vacant, suitable position," suggests he may be relying on GAR 3.10.060.  (See Compl. ¶16.)  While that GAR does contain some mandatory language requiring a transfer to a suitable vacant position, it does not apply to plaintiff.  GAR 3.10.060 (Ex. 9) applies to "reclassified employees."  "Reclassification" is defined in GAR 1.05 (Ex. 9) as "a change in classification of a <u>position</u> by raising it to a higher, reducing it to a lower, or changing it to another class at the same salary level based on significant changes in the kind or difficulty of the duties in the position, or because of an amendment to classification plan."  [Emphasis added.]

GAR 3.10.060 provides the rights of a "reclassified employee":

> Reclassified employees will not normally serve a probationary period.
>
> (a) An employee in a position reclassified to a higher level will be required to meet the general recruiting indicators of the higher class.
>
> (b) If an employee fails to meet the general recruiting indicators of the higher class, the position will be open for recruitment.  The employee will be transferred or demoted if a suitable, vacant position is available, or separated from employment if no other suitable, vacant position exists.

In other words, the mandatory language requiring transfer or demotion only applies to an employee whose "position" is reclassified to a "higher level" and the employee fails to meet the general recruiting indicators of the "higher class."

Here, plaintiff's position was eliminated entirely, not reclassified to a "higher level" for which he was unqualified.  The plain language of GAR 3.10.060 simply does not apply to plaintiff's situation.

Furthermore, as discussed above, even if the court construes GAR 3.10.060 to apply to plaintiff's situation, Piluso and Fussell could reasonably have believed that GAR 3.10.060 did not apply to a position that was eliminated, not reclassified.   Qualified

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

immunity again applies.

And, again, <u>Monell</u> liability does not attach to the City either if, as plaintiff alleges, his constitutional rights were violated in spite of the GARS, rather than because of them.

### d. No Property Right To Be Offered Any Position Despite the Fact The City Has Hired New Line Officers.

Plaintiff's final due process property right contention is that he had a right to be offered, or perhaps placed in, any vacant position within the Police Department because the City was hiring new officers. (Compl. ¶ 19(d)). This is a purely conclusory contention without factual or legal basis. Plaintiff points to no GAR that gives him a property right to placement into any vacant position within the Department. As discussed above, none of the GARS he has cited create such a right. Absent a rule or regulation that restricts the discretion of the decision-maker, no property right exists. <u>See</u> <u>Allen</u>, 911 F.2d at 370. (Ex. 5, Tercek Depo., pp. 24-25.)

In short, none of plaintiff's property rights were violated by any defendant. Defendants should be granted summary judgment on procedural due process property right claims.

### 2. No Due Process Liberty Interest Rights Were Violated.

Plaintiff's Second Claim for Relief alleges that defendants violated a due process "liberty interest in his reputation for honestly [sic], fairness, and competence" because a subordinate "supervised" plaintiff while he cleaned out his office as other subordinates watched. (Compl. ¶¶ 26-27.) He alleges that he was not provided with any pre or post termination name-clearing hearing. (<u>Id.</u> ¶ 28.)

Even though an employee may not have a constitutionally protected property interest in his/her employment, that employee may still assert a liberty interest in that employment. <u>Brady v. Gebbie</u>, 859 F.2d 1543, 1552 (9th Cir. 1988), <u>cert.</u> <u>denied</u>, 489

**MILLER & WAGNER** LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

U.S. 1100 (1989). "A liberty interest is implicated in the employment context if there is a charge which impairs a reputation for honesty or morality." Id. In order to trigger the procedural protections of due process, the plaintiff must show: "(1) the accuracy of the charge is contested; (2) there is some public disclosure of the charge; and (3) the charge is made in connection with termination of employment." Id. The remedy for such a liberty interest violation, if proved, is a "name-clearing hearing" in which the employee is afforded the opportunity to clear his name. Id. at 1554.

Assuming the facts here in the light most favorable to plaintiff, the circumstances of his termination do not implicate any liberty interest.

First, there was no "charge" made in connection with the termination of plaintiff's employment. He was laid off for budgetary reasons, not fired for disciplinary reasons.

The supervision by a subordinate while cleaning out his office, is not "a charge" which impaired plaintiff's reputation as a matter of law. In Bickford v. Tektronix, Inc., 116 Or. App. 547, 551-52, 842 P.2d 432 (1992), the Oregon Court of Appeals ruled that the posting of a security guard in the hallway during and shortly after a termination meeting, was not defamatory as a matter of law. "The inference that posting the guard caused unfounded suspicions is too tenuous to render the act possibly defamatory." Id. at 552.

Nor was there any public disclosure of a "charge" against plaintiff. Piluso told her command staff that plaintiff was being laid off for budgetary reasons. (Ex. 1, Piluso Depo., pp. 36-41.) The layoff notice prepared by Human Resources Director McMillan said the same thing, as did the e-mail sent by Piluso to the entire Police Department immediately after plaintiff's layoff. (Ex. 1, Piluso Depo., pp. 73, 92.) Plaintiff testified that when he was asked by his subordinates "what was going on?," plaintiff replied, "I was laid off." (Ex. 5, Tercek Depo., p. 31.) There is simply no factual basis for a claim for a violation of plaintiff's due process liberty interests. Bishop v. Wood 426 U.S. 341,

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

348 (1976), <u>overruled in nonrelevant part</u>, <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532, 539 (1985) (when the reasons for a discharge are not made public, they cannot properly form the basis for a claim that the person's interest in his good name, reputation, honor or integrity was thereby impaired.)

Here again, Piluso is entitled to qualified immunity on both steps of the <u>Saucier</u> analysis. First, because plaintiff's liberty interest was not violated and second, even if it was, the law was not clearly established that having a subordinate stand by while a laid off employee cleans out his office is unconstitutional. A reasonable public official could have believed, particularly based upon the <u>Bickford</u> decision, <u>supra</u>, that such "supervision" was lawful.

Since there is no evidence defendant Fussell played any role in plaintiff's office cleaning situation, or that it was conducted pursuant to some City policy, there is simply no basis for a liberty interest claim against those defendants.

C.   <u>Plaintiff Fails to State a Claim for Common Law Wrongful Discharge.</u>

Plaintiff's Third Claim for Relief is for wrongful discharge, alleging he was terminated for "exercising a legal right related to his role as an employee of the City of Gresham and that right was of important public interest." (Compl. ¶ 31.)

Although Oregon Courts have repeatedly affirmed the general validity of the at-will employment rule, they have acknowledged exceptions in certain limited circumstances, such as when the discharge is for the exercise of a job related right that reflects an important public policy, or when the discharge is for fulfilling some important public duty. <u>Babbick v. Oregon Arena Corporation</u>, 333 Or. 401, 407, 40 P.3d 1059 (2002). Plaintiff here apparently relies upon the first exception. However, he does not specify what legal right related to his role as a Police Captain was implicated. He simply refers back to his first thirteen paragraphs which allege that he reprimanded lieutenants and sergeants, including Piluso, and required them to meet higher standards, (Compl. ¶

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

9), and that prior to his layoff, Pilusa asked him about his retirement plans and then "apparently dissatisfied with plaintiff's response that he was not immediately planning to retire," eliminated his position. (Compl. ¶ 10.)

In evaluating wrongful discharge claims, courts look to whether plaintiff's alleged employment-related rights identified in case law, statutes, or the Constitution, as relating to an important public interest. Seiverson v. Allied Stores Corp., 97 Or. App. 315, 319, 776 P.2d 38, rev. denied, 308 Or. 382 (1989). Examples of cases in which courts have found an important public interest include Brown v. Transcon Lines, 284 Or. 597, 588 P.2d 1087 (1978) (employee unlawfully discharged for filing workers' compensation claim); Delaney v. Taco Time Int'l, 297 Or. 10, 681 P.2d 114 (1984) (employee discharged for refusing to defame another employee); Nees v. Hocks, 272 Or. 210, 536 P.2d 512 (1975) (employee discharged for serving on jury); McGanty v. Staudenraus, 123 Or. App. 393, 859 P.2d 1187 (1993), aff'd, 321 Or. 532 (1995) (employee discharged in retaliation for resisting sexual harassment).

Situations where the courts have not found a significant employment related right include Archer v. Leticia Corp., 323 Or. 335, 917 P.2d 1024 (1996) (reporting alleged sexual harassment of other employees was not an employment related right because the report was motivated by a concern of financial loss to the company and thus the loss of her own job which was a purely personal objective); Seiverson, 97 Or. App. 315 (1989) (internal report of suspected wrongdoing within private corporation was not of sufficient public interest to sustain a wrongful discharge claim).

Defendant City of Gresham is entitled to summary judgment on this claim because the "job related rights" plaintiff asserts are all personal to him or involve purely internal Police Department matters. First, the right to criticize a subordinate or hold them to a higher standard within the department, though part of a supervisor's job description, does not involve interests of public importance equal or analogous to those that have

Page 21 -    MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**MILLER & WAGNER** LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

been recognized by Oregon Courts as supporting the tort.  There is no allegation or evidence that then-Lieutenant Piluso was misusing funds or public resources when she was "reprimanded" by plaintiff, just that she was not meeting plaintiff's supposed "higher standards."   In fact, plaintiff never "reprimanded" defendant Piluso at all – she consistently "met" or "exceeded expectations" in the performance reviews plaintiff completed on her.  (Ex. 7; Ex. 8.)

Similarly, the allegation regarding Piluso's inquiry about plaintiff's retirement plans is purely personal as well.  Plaintiff testified that he planned to tell Piluso his retirement plans before she even asked.  Also, during a meeting with outgoing Giusto, plaintiff told him of his retirement plans and that he was going to tell Piluso those plans as well.   (Ex. 5, Tercek Depo., pp. 18-21.)  Further, plaintiff testified that the following Monday morning, he tried to see Piluso to tell her of his retirement plans, but she was not available.   (Id. at 21.)  Later that day, Piluso contacted him and he told her he wanted to retire at the end of 2003.[9]  (Id. at 18, 21.)

The GPD had two captain's positions, one filled by Plaintiff and the other by Jerry Johnson.  Piluso also had a similar conversation with her other Captain, Jerry Johnson.  He told her that he planned to retire in July 2003.

Chief Piluso was trying to evaluate her long term and short term command structure in light of the immediate budget shortfall.  One way of compensating for the budget shortfall is to eliminate positions or leave vacant positions unfilled, particularly the more expensive positions such as command staff.  In order to keep more officers on the streets, Piluso was considering reducing her administrative and command structure.  Ultimately, Piluso chose to cut some administrative and command positions rather than

---

[9] Whether or not plaintiff was specific in his retirement date predictions is disputed, but we assume the facts in light most favorable to plaintiff for purposes of this motion.

operational positions.  She intended to flatten her command structure by cutting out the intermediate captain's positions and have lieutenants report directly to her as the Chief of Police.

In order to determine whether those captain's positions needed to be abolished or were going to become voluntarily vacant, Piluso asked both plaintiff and Johnson about their retirement plans.  It is ludicrous to suggest that a Department Head, such as the Chief of Police, cannot ask her senior command staff about their retirement plans in an effort to predict and prioritize her long term and short term staffing needs.  It is certainly not wrongful or improper to do so.

Johnson reported that he was planning to retire in July 2003.  Plaintiff allegedly stated that he was going to retire at the end of 2003.  When faced with one Captain with over 25 years of GPD service who was planning to retire at mid year and another Captain with 5 years of service who was going to retire at the end of the year, coupled with an historic mid-fiscal year budget crisis, it was entirely rational to abolish the latter position and not the former.  This is not wrongful termination, but a rational prioritizing of personnel resources.

Plaintiff fails to satisfy the "wrongful" element and his wrongful termination claims should be dismissed.

D.    **Plaintiff Fails to State a Claim for Common Law Defamation – Slander Per Se**.

Plaintiff's Fourth Claim for Relief is for "Defamation - Slander Per Se."  (Compl. ¶¶ 34-34.)  Plaintiff alleges that the City engaged in a "defamatory act" by publicly terminating him in front of subordinate employees (Compl. ¶ 35), and that defendants made defamatory statements to third parties while plaintiff was cleaning out his office, (Compl. ¶ 36.)

First, plaintiff was not laid off in public or in front of his subordinates.  Plaintiff was laid off in a private meeting attended only by the plaintiff, Chief Piluso and the

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

Human Resources Director John McMillan.  (Ex. 5, Tercek Depo., pp. 29-30.)  Second, the presence of a "subordinate" who allegedly "supervised" plaintiff while he cleaned out his office is not defamatory as a matter of law.  Bickford, supra, 116 Or. App. at 551-52 (holding that the posting of a security guard in the hallway during and shortly after a termination meeting, was "too tenuous" an inference to be defamatory as a matter of law).  Moreover, at deposition, plaintiff was unable to identify any defamatory statement made by any City employee while he cleaned out his office.  (Ex. 5, Tercek Depo. at 31-36.)  In fact, plaintiff told the subordinates who approached him during the process that he had been "laid off."  (Id. at 31.)

The only statements that plaintiff attributes to defendants, which were in his opinion defamatory, were "rumored" statements by Piluso that she "disliked" him and "didn't like what I was doing in the department."  (Id. at 35.)

Whether a communication is capable of bearing a defamatory meaning is a question of law for the court.  See e.g. Beecher v. Montgomery Ward and Co., 267 Or. 496, 500, 517 P.2d 667 (1973); Andreason v. Guard Publishing Co., 260 Or. 308, 489 P.2d 944 (1971).  Whether or not Piluso "liked" plaintiff or how he did his job, are pure expressions of opinion.  Expressions of opinion cannot form the basis of a defamation claim.  Hass v. Painter, 62 Or. App. 719, 723-25, 662 P.2d 768, rev. denied, 295 Or. 297 (1983).

The City is entitled to Summary Judgment on plaintiff's defamation claim.

E.    **Plaintiff Fails to State Claims for Breach of an Implied Contract or Promissory Estoppel.**

Plaintiff's Fifth Claim for Relief alleges Breach of an Implied Contract and his Sixth Claim for Relief alleges Promissory Estoppel.  They are redundant and in reality the same claim.  He alleges an oral agreement between himself and former Chief of Police Giusto that he claims he relied upon to his detriment.  (Compl. ¶¶ 39-45.)  Specifically,

Page 24 -    MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**MILLER & WAGNER** LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

he alleges that prior to accepting the newly created Captain position with GPD, former Chief Giusto assured him that if the Captain's position were eliminated, he would be moved to the position of lieutenant. (Compl. ¶¶ 39, 43.) In reliance upon former Chief Giusto's representations, plaintiff alleges he left the job security of the City of Portland and came to work for the City of Gresham. (Compl. ¶¶ 39, 44.)

In the absence of a contractual, statutory or constitutional limitation on the right to terminate an employment relationship, an employer may terminate an employee at any time for any reason. Sheets v. Knight, 308 Or. 220, 230, 779 P.2d 1000 (1989). However, oral statements can create implied contracts limiting the right to terminate or creating other terms of employment. Seibel v. Liberty Homes, Inc., 305 Or 362, 365, 756 P.2d 291 (1998). "Oregon subscribes to the objective theory of contract interpretation, which requires a court to look not at the parties' subjective understandings, but at their communications and overt acts." Koepping v. Tri-Met, 120 F3d 998, 1002 (9th Cir. 1997).

Here, Giusto's communications and overt acts demonstrate that any agreement between he and plaintiff was purely personal to Giusto. Former Chief of Police Giusto testified that during his preemployment discussions with plaintiff, he told plaintiff that if the newly created Captain's position were eliminated, "I would entertain moving him to a lesser – a lower rank position, lieutenant, if the job was open, and I said I would, based on a couple of factors." (Ex. 4, Giusto Depo., pp. 4-5 (emphasis added).) Giusto knew that he could not bind subsequent Chiefs of Police to this type of command staff decision. (Id. at 5.) This was confirmed in Giusto's letter to plaintiff of December 19, 2002 which states in relevant part:

> However, it would be consistent with my bringing you into Gresham PD
> that if such a question was posed to me, I would have stated that should a
> vacant lieutenant's position be available at the time of the captain's
> position being eliminated, I would move you to that position unless
> performance issues prevented it.

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

(Ex. 4, Giusto Depo., p. 10 (emphasis added).)

Plaintiff does not dispute Giusto's recollection of their preemployment conversation.  Plaintiff cannot recall whether Giusto said that "we will" move you into an open Lieutenant's position, or whether Giusto said "I will" move you into the open position.  Plaintiff merely assumed Giusto was speaking on behalf of the City, rather than on behalf of himself.  (Ex. 5, Tercek Depo., p. 6.)  A few days later, when plaintiff received a letter from Giusto confirming the terms of his employment with the City, he saw that the letter said nothing at all about any such promise. (Ex. 5, Tercek Depo at 22-24.)

The undisputed evidence is that Giusto made a personal promise to plaintiff that he would take care of plaintiff and move him to a lower rank position if the Captain's position was eliminated, not that the City of Gresham would do so.  This promise by Giusto is completely consistent with the discretion the Chief is afforded under GAR 3.05.010(f)(2).  Giusto's personal promise expired when he left the City to become the Multnomah County Sheriff.

Plaintiff's breach of implied contract and promissory estoppel claims must fail because the personal agreement between plaintiff and the former Chief Giusto expired when Giusto's City employment ended.  An essential element of the agreement was gone: Giusto's ability to make staffing decisions.

**F.**   **Plaintiff Fails to State a Claim for Common Law Intentional Infliction of Emotional Distress.**

Plaintiff's final claim for relief is for intentional infliction of emotional distress based upon "the manner in which plaintiff's termination was orchestrated and implemented by Police Chief Piluso in the course and scope of her duties for the city of Gresham."  (Compl. ¶ 47.)

The elements of the tort of intentional infliction of severe emotional distress are:

Page 26 -    MEMORANDUM OF LAW IN SUPPORT OF
             DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**MILLER & WAGNER** LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

(1) the defendant intended to inflict severe emotional distress or there was a "special relationship" between the parties and defendant recklessly caused such distress; (2) defendants acts in fact caused plaintiff severe emotional distress; and (3) defendant's acts consisted of "some extraordinary transgression of the bounds of socially tolerable conduct" or exceeded "any reasonable limit of social toleration." Patton v. JC Penney Company, 301 Or. 117, 122, 719 P.2d 854 (1986).   The "conduct must be outrageous in the extreme."  In Oregon, "outrageous conduct" must be an "extraordinary transgression of the bounds of socially tolerable conduct." Meagher v.Lamb-Weston, Inc., 839 F.Supp. 1403, 1410 (D. Or. 1993).  The threshold determination of whether the conduct was "outrageous" is one for the Court.  Id.

Plaintiff's claim fails on the third element: the conduct was not outrageous as a matter of law, even assuming the facts in the light most favorable to plaintiff.  None of plaintiff's facts or allegations rise to the level of "extraordinally transgressions of the bounds of socially tolerable conduct."  In Oregon, courts have routinely dismissed this tort in the employment context on facts that are far more egregious than those alleged by plaintiff here. As discussed above, in Bickford v. Tektronix, 116 Or. App. at 552, the posting of a security guard during a termination meeting did not amount to an "extraordinary transgression of the bounds of socially tolerable behavior."  Further, in Watte v. Edgar Maeyens, 112 Or. App. 234, 239, 828 P.2d 479, rev. den. 314 Or. 176 (1992), the court held that an employer's conduct during the course of discharging former employees by directing them to hold hands, demanding they surrender their keys, pacing intensely in front of them with clenched hands, accusing them of being liars and saboteurs, terminating their employment, refusing to explain their misconduct, and ordering them from the premises, did not rise to the level of socially intolerable conduct. See also Garbayo v. Chrome Data Corp., 2001 WL 34039495, *2 (D.Or. April 16, 2001) (Judge King adopted Magistrate Judge Ashmanskas' findings that an employer's

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

accusation of falsification of revenues and implication of criminal conduct in front of co-workers was not sufficient to state a claim for intentional infliction of emotional distress.); Volm v. Legacy Health Systems, Inc., 237 F. Supp. 2d 1116, 1180 (D.Or. 2002)(allegations that doctors and nurses set out to destroy plaintiff's career, intentionally encouraged a hostile atmosphere toward her at the work place, held repeated meetings in which they blamed her for all problems existing at the Meridian Park Family Birth Center, and leveled allegations of wrongdoing without providing her the information necessary to address them, was not conduct sufficient to constitute an extraordinary transgression of the bounds of socially tolerable conduct.)

Plaintiff's intentional infliction of emotional distress claim fails as a matter of law.

DATED this 31st day of August, 2004.

MILLER & WAGNER LLP


By: s/ David C. Lewis
    David C. Lewis, OSB #95334
    Of Attorneys for Defendants

    Trial Attorney:
    Robert S. Wagner, OSB #84411

Page 28 -    MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 31st day of August, 2004, I served the foregoing

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY

JUDGMENT, on the following party at the following address:

      Judy Danelle Snyder
      Attorney at Law
      1000 S.W. Broadway, Suite 2400
      Portland, OR  97205
      e-mail:  judy@jdsnyder.com
           Of Attorneys for Plaintiff


by CM/ECF and by hand-delivering to her a true and correct copy thereof.


                        s/ David C. Lewis
                        David C. Lewis, OSB #95334

**MILLER & WAGNER** LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116